record does not sustain this contention. The balance sheets of the taxpayer for the years 1919, 1920, and 1921 are in evidence and indicate a paid-in capital and surplus of something like $30,000, with only a very small investment in fixed assets. The office equipment and hand trucks which constitute the whole of the taxpayer's capital investments in tangible property do not exceed $5,000 in value. It is evident, therefore, that liquid invested capital in excess of $25,000 is available for business operations at all times.

The evidence shows that the average monthly receipts of the taxpayer for the three years in question exceeded $12,500, and that about one-half of such receipts was paid in advance for periods ranging from ten to fifteen days. Money received for services to be rendered in the future is instantly available for business operations requiring liquid capital. This taxpayer had the use, without interest, of several thousands of dollars of its customers' money at all times. Such cash payments for services to be rendered in the future, if used in business operations, are borrowed capital.

In the light of all the evidence the Board is of the opinion that capital is a material-income producing factor in this taxpayer's business, and it follows, therefore, that the principal stockholders are not primarily responsible for the income. Having failed to satisfy two essential requirements for personal-service classification, the taxpayer must be denied the relief prayed for in its petition.

---

## Appeal of STAR SPORTING GOODS CO.    Docket No. 1832.

Submitted April 21, 1925; decided May 27, 1925.

*W. Frank Gibbs, Esq.,* for the Commissioner.

Before JAMES, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits taxes for the year 1919 amounting to $846.86, a portion of which is not in issue.

### FINDINGS OF FACT.

The taxpayer is a New York corporation located in New York City.

During the year 1919 the taxpayer sold certain factory property acquired in the year 1912. The sales price was $20,500. The cost of the property to and including the date of sale and the value on March 1, 1913, was $28,000.

The taxpayer claimed a loss on account of said sale of $7,500. The Commissioner reduced that amount of loss by $3,689, alleged to be depreciation upon improvements for the period between the acquisition of the property and the date of sale.

### DECISION.

The determination of the Commissioner is approved. *Appeal of Even Realty Co.,* 1 B. T. A. 355.